# FOR PUBLICATION

FILED & ENTERED

JAN 27 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY craig    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>KIRK EUGENE FRANTZ & MARY ELIZABETH FRANTZ<br><br><br>Debtors. | Case No: 6:15-bk-19432-MH<br><br>Chapter: 13<br><br>**ORDER SANCTIONING ATTORNEY JENNY DOLING**<br><br>Hearing Held:<br><br>Date: September 22, 2022<br>Time: 11:00 a.m.<br>Place: 3420 Twelfth St.<br>Riverside, CA 92501<br>Courtroom: 301 |

*I.    Background*

On September 25, 2015, Kirk & Mary Frantz (collectively, "Debtors") filed a Chapter 13 voluntary petition. On October 22, 2015, Debtors filed a motion to avoid the junior lien of John Irving, Trustee of the Irving Family Trust ("Irving Family Lien"), pursuant to 11 U.S.C. § 506 ("Lien Avoidance Motion"). On November 18, 2015, the Court entered an order conditionally granting the Lien Avoidance

- 1 -

Motion. The Court's order expressly provided that avoidance of the Irvine Family Lien was effective upon, and contingent upon, "completion of the chapter 13 plan." [Dkt. No. 27, sections 4(b)(2) and (6)].[1]

On December 21, 2015, Debtors' Chapter 13 plan was confirmed, pursuant to which, in part, Debtors were to make direct mortgage maintenance payments to The Bank of New York Mellon ("BNYM"). The plan was subsequently modified three times. Pursuant to the third plan modification, Debtors took advantage of the plan modification provision adopted during the pandemic for debtors who had experienced a financial hardship due to COVID, suspending six plan payments and extending the plan term eighteen months because they "had a roommate who left without notice due to COVID-19." [Dkt. No. 225].

On May 11, 2022, the Chapter 13 trustee filed its notice of intent to file final report. On June 3, 2022, BNYM filed a response to notice of final cure payment, indicating that Debtors were $52,439.58 delinquent on their direct mortgage payments. On June 6, 2022, the Chapter 13 trustee ("Trustee") filed a motion to dismiss the case for failure to make plan payments ("Motion to Dismiss"), specifically the default in direct payments to BNYM. Key to this matter, in the Motion to Dismiss, the Trustee expressly argued, citing applicable Ninth Circuit BAP authority, that the direct mortgage maintenance payments to BNYM were "payments under the plan" for purposes of eligibility under 11 U.S.C. 1328(a), and that failure to make those payments constitutes a material default under the plan. [Dkt. No. 298, pp. 3-4]. Stated otherwise, if somehow the Court disagreed with the Trustee's authority, there would have been no legal basis to grant the Motion to Dismiss. Debtors did not file any opposition to the Motion to Dismiss.

---

[1] Lien avoidance in chapter 13 cases requires a two-step process. In the first step, a debtor files a motion to value the collateral, which must be resolved contemporaneously with the confirmation of a chapter 13 plan. A lien, however, is not actually avoided until a debtor completes the chapter 13 plan, meaning all the plan payments are made. In the second step, a debtor or a debtor's attorney files a declaration under the penalty of perjury to prove to the Court that all plan payments have been made. Debtors in this case employed this two-step process using the Court's form pleadings established under the local rules. Since the Court does not perform the accounting function of tracking a debtor's chapter 13 plan payments, it must rely on the representations made by a debtor or debtor's counsel in the declaration filed under penalty of perjury that all plan payments have been made before an order avoiding a lien is entered.

The first hearing on the Motion to Dismiss on June 30, 2022, was approximately four minutes in duration. Attorney Jenny Doling ("Ms. Doling") appeared on behalf of the Debtors. The sole basis of Ms. Doling's oral opposition to the Motion to Dismiss was that Debtors believed that the arrears should have been added to the end of the loan pursuant to a loan modification allegedly entered into during the pandemic, and Ms. Doling requested a four-week continuance to resolve the issue. Despite the fact that Ms. Doling failed to file a written opposition as required by the Court's local rules if a party opposes the relief requested, based upon Ms. Doling's oral request the Court continued the hearing on the Motion to Dismiss for four weeks to July 28, 2022. The Court instructed Ms. Doling that if the matter was not resolved by then, a declaration was to be filed by July 25, 2022, detailing any updates.

After the continuance, on July 12, 2022, Debtors filed their applications for discharge where they indicated that, *inter alia*, "I have completed all payments required by my confirmed plan." [Dkt. Nos. 308 and 309].

On July 28, 2022, the Court held a second hearing on the Motion to Dismiss. At that date and time, Debtors had still not cured the default owing to BNYM, nor had the required declaration from Debtors (due July 25, 2022) been filed. At the hearing, Ms. Doling represented that: "Patrick Lovejoy for the loss mitigation part of Shellpoint Mortgage Servicing had said the loan was approved for a loan modification. It is in the trial period and they will be withdrawing." [Dkt. No. 336]. At the conclusion of that hearing, based on the continuing default past the plan term, the Court continued the hearing on the Motion to Dismiss for a second time to August 25, 2022, telling Ms. Doling that "unless I have a[n] unqualified withdrawal of the notice by the lender, I'm going to dismiss the case."

Notwithstanding this background however, after the second continuance of the hearing on the Motion to Dismiss, on August 5, 2022, Ms. Doling filed the Declaration RE: Debtor's Motion to Avoid Lien on Principal Residence (the "Declaration"), pursuant to which Ms. Doling sought a final order avoiding the Irving Family Lien, in which Ms. Doling stated in part that "Debtor has completed the Chapter 13 plan."

[Dkt. No. 316]. Ms. Doling then uploaded a proposed order requesting that the Court enter a final order avoiding the Irving Family Lien on their principal residence.

Prior to the third hearing on the Motion to Dismiss, Debtors filed a declaration that declared, *inter alia*, that "We have completed our trial payment period and await the final modification agreement from Shellpoint. We have been advised Shellpoint is amending its response to the Notice of Final Cure to reflect the completion of the trial modification and approval of the permanent modification which removes any arrears." [Dkt. No. 320, ¶ 16]. Ms. Doling also filed a declaration that included the statement that "Debtors' loan is now deemed current." [Dkt. No. 321, ¶ 6].

At the third hearing on the Motion to Dismiss, on August 25, 2022, when asked by the Court whether there was still a delinquency, counsel for the mortgage servicer stated "Right now they are owing, your Honor." [Dkt. No. 337, pg. 18, line 9]. Counsel for the mortgage servicer also stated that "the inescapable facts are, until that event [the formation of a binding agreement] is done, their default exists." [*Id*. at pgs. 18-19]. Debtors requested an additional continuance of the hearing on the Motion to Dismiss, but the Court denied that request, granted the Motion to Dismiss, and dismissed the case pursuant to order entered August 26, 2022. Of significance, during the hearings on the Motion to Dismiss the Court made multiple references acknowledging that the Debtors were in default under the plan, and that Trustee was entitled to dismissal of the case. Yet at no point during any of the three hearings on the Trustee's Motion to Dismiss did Ms. Doling raise any opposition or argument (or file any written opposition) on the basis that either, notwithstanding Debtor's uncured default in the monthly mortgage maintenance payments, such direct payments should not be considered "payments under a plan", or that the Debtors' plan could or should somehow otherwise be deemed "completed". Instead, Ms. Doling's only argument was that, on equitable grounds, the hearing should be continued further generally because the Debtors had been in the plan for a long time, and because Debtors were allegedly close to getting a loan modification approved which would eliminate the default.

Based on the apparently false statement in Ms. Doling's Declaration that Debtors had "completed the Chapter 13 plan", on August 31, 2022, the Court issued an Order to Show Cause as to why Counsel should not be sanctioned under FED. R. BANKR. P. Rule 9011 and/or the Court's inherent sanction authority and Local Bankruptcy Rule 2090-2 ("OSC"). On September 14, 2022, Counsel filed her response ("Response"), and on September 21, 2022, Counsel filed a supplemental brief ("Supplement").

As noted above, the Trustee's Motion to Dismiss filed on June 6, 2022, cited Ninth Circuit BAP authority (*In re Mrdutt*, 600 B.R. 72, 81 (B.A.P. 9th Cir. 2019)), for the proposition that direct payments made by a debtor are "payments under a plan", and further indicated that "nearly all cases which have analyzed the issue" are of the opinion that "payments required to be made directly to creditors under a confirmed chapter 13 plan are 'payments under the plan,' as that term is used in § 1328(a)." (citing *In re Evans*, 543 B.R. 213, 223 (Bankr. E.D. Va. 2016)). Recently, the Ninth Circuit Court of Appeals has also suggested that direct payments are plan payments. *See In re Silva*, 2022 WL 2340802 at *1 ("The bankruptcy court properly dismissed Silva's bankruptcy action because Silva committed a material default with respect to a term of the confirmed Chapter 13 plan by failing to make contractual post-petition payments to creditors.") (*citing Mrdutt*). Based on this authority, because Debtors had not cured the default in payments owing to BNYM after multiple hearings on the Motion to Dismiss, the Court both declined to enter a final order avoiding the Irving Family Lien, and dismissed the Debtors' case.

II.    *Legal Authorities*

FED. R. BANKR. P. Rule 9011(b)(2)-(3), (c)(1)(B) provides that:
> (b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --

    (1) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

    (2) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(c) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation

    (1)(B) On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

Local Bankruptcy Rule 2090-2 provides:

(a) An attorney who appears for any purpose in this court is subject to the standards of professional conduct set forth in Local Civil Rule 83-3.

(b) An attorney appearing this court submits to the discipline of the court. If a judge has cause to believe that an attorney has engaged in unprofessional conduct, the judge may do one or more of the following:

  (1) Initiate proceedings for civil or criminal contempt;

  (2) Impose other appropriate sanctions;

  (3) Refer the matter to the appropriate disciplinary authority of the state or jurisdiction in which the attorney is licensed to practice; or

   (4) Refer the matter pursuant to the procedures set forth in Local Civil Rule 83-3 or General Order 96-05, Attorney Discipline Procedures in Bankruptcy Court.

ABA Rules of Professional Conduct Rule 3.3 provides:

(a) A lawyer shall not knowingly:

  (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer

### III. Legal Analysis

#### A. Sanction Standard

"Case law interpreting Rule 11 is applicable to Rule 9011." *In re Nakhuda*, 544 B.R. 886, 899 (B.A.P. 9th Cir. 2016). "*Sua sponte* sanctions will ordinarily be imposed only in situations that are akin to a contempt of court." *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1116 (9th Cir. 2001) (quotation and italicization omitted); *see also* FED. R. CIV. P. Rule 11 advisory committee's 1993 notes. While, "the 'akin to contempt' standard is neither well-developed nor consistently applies . . . [it] seems to require conduct that is particularly egregious and similar to conduct that would be sanctionable under the standards for contempt." *In re Nakhuda*, 544 B.R. at 901 (collecting cases).[2]

---

[2] The cases cited by *In re Nakhuda* do not provide a particularly clear or coherent articulation of the precise standard under Rule 11 or Rule 9011. *See MyMedicalRecords, Inc. v. Jardogs, LLC*, 2015 WL 5445987 at *2 (C.D. Cal. 2015) ("bad faith standard"); *Brown v. Royal Power Mgmt., Inc.*, 2012 WL 298315 at *4 (N.D. Cal. 2012) ("bad faith and lacked forthrightness"); *Stone v. Wolff Props. LLC*, 2005 WL 1389893 at *2 (9th Cir. 2005) "Sua sponte sanctions will ordinarily be imposed only in situations that are akin toa a contempt of court. Stone's conduct, though perhaps not laudable, was not so 'egregious' as to be considered 'beyond the pale.'") (citation omitted); *Sanai v. Sanai*, 408 Fed. Appx. 1, 2 (9th Cir. 2010); *Lynch v. Cal. Ct. App., 3rd Dist.*, 2008 WL 2811197 (E.D. Cal. 2008) ("particularly egregious, i.e., akin to contempt of court") (quotation omitted).

In accordance with the foregoing, the Court concludes that Rule 9011 *sua sponte* sanctions require a finding of willful bad faith based upon clear and convincing evidence. *See* footnote 2; *see also Revellino & Byczek, LLV v. PANYNJ*, 682 Fed. Appx. 73, 75 (2nd Cir. 2017) ("Thus, much like contempt orders, *sua sponte* sanctions imposed without permitting the offender the opportunity to withdraw the problematic filing should issue only upon a finding of subjective bad faith."); *McDonald v. Emory Healthcare Eye Center*, 391 Fed. Appx. 851 (11th Cir. 2010) (willful bad faith).

Likewise, the Court's inherent sanction authority, while applicable to a greater variety of conduct, also appears to require willful bad faith or misconduct. *See, e.g.*, *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003) ("bad faith or willful misconduct"); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

As outlined in the OSC, the Chapter 13 Trustee filed the Motion to Dismiss for a material default with respect to plan payments. Debtors did not file an opposition as required by the Court's local rules or contest Trustee's framing of the issue. Instead, Debtors proceeded to file multiple[3] documents with the Court unrelated to the Motion to Dismiss, under penalty of perjury, simply declaring that all plan payments were made, despite it being uncontested at multiple prior hearings that that was not true, factually or legally. The Court further notes that Ms. Doling's Declaration was not set for hearing so she could argue that the plan had in fact been completed, nor did it contain any legal argumentation or qualification regarding whether the plan payments had all been made and/or that the plan had been completed. And, as outlined in the Motion to Dismiss and the OSC, the clear majority of caselaw including *In re Mrdutt*, 600 B.R. 72 (B.A.P. 9th Cir. 2019) and *In re Silva*, 2022 WL 2340802 (9th Cir. 2022), indicate or hold that direct payments are plan payments.

The testimony at issue, where Ms. Doling states that Debtors "completed the Chapter 13 plan", certainly deserves analysis. In the Court's view, the statement is somewhat a mixture of fact and law.  It is

---

[3] The Court notes that each Debtor filed a Certificate of Compliance Under 11 U.S.C. § 1328(a) declaring that all plan payments were made. Although Ms. Doling electronically filed them, which could subject her to potential Rule 11 sanctions, these declarations are not signed by counsel and are thus not within the scope of the OSC.

- 8 -

uncontested that the plan *term* had ended, but that alone certainly cannot determine the inquiry and suffice to protect the integrity of the statement, because plan term alone ignores whether plan payments have been competed (and Chapter 13 cases often have existing defaults in either payments to the Trustee or direct payments at the end of the plan term). Thus, the inescapable logic is that a Chapter 13 plan is "completed" only once all plan payments have been made. Now, certainly an argument can be made that a direct mortgage maintenance payment is not a payment under the plan, but critical to the analysis before the Court is: (1) Ms. Doling was clearly aware of the Trustee's position in the Motion to Dismiss (and the authority cited therein) that the default in the direct payments was a default of payments due under the plan that warranted dismissal; (2) Ms. Doling was aware of the Court's position -- stated multiple times during the hearings -- that there was an existing default that warranted dismissal; (3) Ms. Doling did not contest either the Trustee's authority or the existence of default in connection with the Motion to Dismiss, and did not file any written opposition; (4) notwithstanding the foregoing, Ms. Doling subsequently submitted the Declaration stating that Debtors "completed the Chapter 13 plan"; and (5) the statement was made knowingly and intentionally, as there is no reference by Ms. Doling in the Response or Supplement that the testimony was inadvertent or mistaken (and indeed the entirety of the Response and Supplement attempts to defend Ms. Doling's appropriateness in making the statement).

The test for whether this statement is true or false cannot be evaluated in light of what some other court in the conceded minority may have held on this issue, but in context of the facts of this matter. And in this case, Ms. Doling clearly knew that the only authority before the Court was that (a) direct payments were plan payments, and (b) Debtors had not cured a material default in the direct payments, and at no point did Ms. Doling disagree with these points. Thus, it was crystal clear to Ms. Doling that the legal status of the issue at the time of the hearings on the Motion to Dismiss, and therefore at the time she signed and filed the Declaration, was that all plan payments had not been made, and, by necessary implication, that the Plan had not been completed. Nonetheless, as part of her attempt to obtain an order

avoiding the Irvine Family Lien, Ms. Doling stated the opposite – that the Plan *had* been completed. Her statement was clearly false.

### B. Ms. Doling's Arguments

In Ms. Doling's Response and Supplement, Ms. Doling presents a variety of explicit and implicit arguments and assertions in the background and procedural history sections, as well as in the argument section, that warrant comment. The Court below addresses these arguments and assertions in turn as best it can.

> 1. *Ms. Doling's Argument That Whether Direct Mortgage Payments Are Payments Under The Plan Has No Controlling Precedent And Is A Fairly New Legal Theory*

Counsel's primary argument in response to the OSC is that the argument that direct payments are not plan payments is not a frivolous argument and, therefore, sanctions for making that argument are inappropriate. Devoid of any context, the Court agrees with that statement. The Court is regularly presented with Chapter 13 cases in which an assertion is made at the end of the case that all plan payments have been made despite a secured creditor having file a response to a final cure notice indicating that the debtor is delinquent on direct payments. The Court's standard practice is to set a hearing to note the direct payment delinquency and provide the debtor with an opportunity to cure. In fact, at three of the four Chapter 13 calendars during which the Court heard the Trustee's Motion to Dismiss or the OSC, the Court also had hearings in other cases where the plan term ended but the debtor was still delinquent on plan payments.

The context here, however, is dramatically different. The Chapter 13 Trustee filed its Motion to Dismiss asserting that direct payments were plan payments and that Debtors were in default. Debtors did not file an opposition. The Court held several hearings on the Motion to Dismiss, and Ms. Doling did not

challenge that legal characterization *whatsoever*. It was thus abundantly clear[4] that the Court adopted the Trustee's position and considered direct payments to be payments under the plan as a necessary basis to dismiss the case. However, despite never contesting the issue, Ms. Doling then filed the Declaration asserting that Debtors had "completed the Chapter 13 plan", and without hearing or notice sought an order finding the same.

To be clear, Ms. Doling was absolutely free to make the argument that direct payments are *not* "payments under a plan" (and that, by extension, a default in direct payments does not mean a plan is not "completed") either in opposition to the Motion to Dismiss or as a qualification of some sort in the Declaration. As an aside, given the caselaw cited in the Trustee's Motion to Dismiss and the OSC, particularly *In re Mrdutt*, 600 B.R. 72 (B.A.P. 9th Cir. 2019) and *In re Silva*, 2022 WL 2340802 (9th Cir. 2022), it appears that Ms. Doling would have an uphill battle. But here, after being presented with both the Trustee's and the Court's shared position on the issue, and after declining to contest or in any way argue an alternative position, Counsel is not free to simply to retroactively adopt a minority position and revise the history of this matter. Quite simply, the legal conclusion that direct payments are plan payments was uncontested in this case, and, therefore, the factual statement that Debtors had completed the plan was not true.

The Response distorts and obscures the relevant issue. For example, in the final paragraph of the legal analysis, Counsel contends: "It would be an error by Counsel to not raise these important legal arguments [i.e. what constitutes a plan payment] on behalf of Debtors or to blow a filing deadline when there was a good faith belief, factually and under the law, that Debtors had completed their plan." [Dkt. No. 339, page 9, lines 16-18]. This statement contains multiple gross inaccuracies. First, there was no filing deadline. Bankruptcy cases to occasionally dismissed and reopened years later for debtors to

---

[4] At the hearing on July 28, 2022, the Court, on multiple occasions, characterized Debtors as being in default and that dismissal was warranted. Moreover, as previously noted, at three of the four Chapter 13 calendars during which the Motion to Dismiss or the OSC was heard, calendars that Ms. Doling attended, there were hearings in other cases regarding a debtor's eligibility for a discharge when they had failed to make all direct plan payments during the plan.

- 11 -

complete the second step of the lien avoidance process. So here, there was no reason for Ms. Doling not to wait until the Motion to Dismiss was resolved before filing the Declaration. Second, Counsel *never raised* these important legal arguments, despite multiple hearings and multiple opportunities to file a pleading, and despite being presented with the Trustee's position as adopted by the Court that failure to make direct payments is a default in payments under the plan warranting dismissal. This distinction cannot be stressed enough.

Ms. Doling obfuscates the issue by repeatedly claiming she should be entitled to argue the issue that direct payments are not plan payments. She asserts that "[w]hat constitutes a payment "under the plan" is unresolved and is certainly subject to any good attorney arguing for her client that a mortgage paid directly and not modified is *not* a payment under the plan" [Dkt. No. 339, pg. 9, lines 8-10], and that "[h]owever, this court may rule on whether a direct-pay mortgage payment is a payment "under the plan" is for this court to decide, but it is well-within reason for me to argue that the plan had completed, and file the final lien avoidance order that specifically says the lien is avoided upon "completion" not discharge." [Dkt. No. 340, pg. 4, line 8-11]. There are at least two glaring problems with this position. First, while Ms. Doling was free to make that legal argument, she never did as part of the Declaration or otherwise during the hearings on the Motion to Dismiss, and thus the point is completely meritless.

Second, evaluating Ms. Doling's arguments quoted above, when in fact did she hypothetically plan to argue that the plan had completed? She says she not only can but should make the argument, but here, fully aware of the Court's position on the issue from the multiple hearings on the Motion to Dismiss, the simple fact is that she never set the Declaration for hearing, and so her approach clearly was not to affirmatively raise the argument for the Court as part of or before seeking a final order on the Lien Avoidance Motion. Stated otherwise, the inescapable conclusion Ms. Doling seems to advance is that even though this Court's position about direct payments being plan payments was based on Trustee's cited authority and never opposed by Ms. Doling, this Court somehow had the independent burden to verify her testimony in the Declaration (and apparently should not have relied on it), and only when and

if the Court caught the patently false statement it was the Court's obligation to set the matter for hearing, at which time Ms. Doling would have the opportunity to argue the veracity. The plain implication of this argument disingenuously places the cart before the horse, and by logical extension would completely eviscerate any obligation of counsel to be truthful in statements made to a court.[5]

> 2. *Ms. Doling's Argument That She Cannot Be Responsible For The Veracity Of Her Statement Because She Did Not Know The Court's Position On Whether Direct Payments Are Payments Under The Plan*

Ms. Doling argues, as somewhat of a subset of the foregoing section, that "[w]ith no statutory authority and no controlling circuit court authority defining payments under the plan, Counsel could not have known this Court's position." [Dkt. No. 339, page 6, lines 1-2]. Candidly, in light of the background discussed herein, this statement is itself also sanctionable. Ms. Doling was abundantly clear of this Court's position that direct payments were payments under a plan because the only two arguments (in fact the specific headings) in the Trustee's Motion to Dismiss were (1) "<u>Direct Payments Constitute "Payments Under the Plan</u>", and (2) <u>Debtor's [sic] Failure to Make Direct Payments Constitutes a Material Default Under the Plan</u>", and the Court *repeatedly made it clear* to Ms. Doling that the existing default warranted dismissal. Again, Ms. Doling never opposed this legal argument orally or in writing, and only requested further continuances on equitable grounds. It is utterly disingenuous for Ms. Doling to now assert she was somehow not aware of the Court's position.

---

[5] As also suggested in the OSC, rather than the convoluted and illogical argument presented by Ms. Doling, a much more believable reason for the facts that actually occurred in this case is that counsel was simply trying to slip one past this Court and try to obtain an order avoiding the Irvine Family Lien in the event the Motion to Dismiss was granted. Even though that order would be subject to challenge, if the Debtors were to present that order to the lienholder it is certainly plausible that the lienholder would accept the order as valid.

### 3. *Ms. Doling's Argument That It Is The Court's Independent Duty And Obligation To Review Orders Before Entering Them, And Thus, Apparently, It's The Court's Fault If It Enters An Order Based On A False Statement Of Counsel*

Ms. Doling states in the Response, page 7, lines 10-16 as follows.

> "To suggest that Counsel filing the routine documents is somehow a nefarious effort to sneak an order past this Court completely ignores this Court's independent duty and judgment to review the orders before entering them.  Counsel has no reason to believe this Court would ever enter an order it did not approve, especially in a time where bankruptcy filings are at a historical low, and this Division of the Central District of California just gained a fourth bankruptcy judge to share the historically low case load. Even in the high-filing days, Counsel would never contemplate that a Court would enter an order in error or that it did not vet and approve.  That simply is not a risk or strategy ever contemplated by Counsel."

Ignoring Ms. Doling's apparent sarcasm, Ms. Doling here seems to imply that it is the Court's responsibility to catch false testimony (or any misstatement apparently) made by counsel in connection with presenting required evidence for a proposed order. Sarcasm aside, Ms. Doling completely misses the point. Yes, of course, the Court reviews all orders as best it can to ensure that orders are correct and supported by the record. And luckily here the Court did catch Ms. Doling's false statement. But in reviewing orders the Court necessarily has only the record before it to rely on in ensuring that orders are entered as accurately as possible. That is *precisely* why it is so very important for counsel to adhere to a duty of candor and otherwise be truthful with the Court, and that is *precisely* why it is so problematic if counsel are not truthful. Stated otherwise, whether the Court knows or should know that counsel testimony is false is wholly irrelevant to the counsel's duty of candor.

4. *Ms. Doling's Argument That A Simple Continuance Would Have Resolved The Matter*

While not directly on point to the OSC, in the Response Ms. Doling appears to argue that the Court was inequitable in granting the Motion to Dismiss. Specifically, Ms. Doling argues that "[a] simple continuance to allow the lender to amend or withdraw its response to the trustee's notice of final cure, would have allowed that to happen [the final loan modification agreement to be completed]." [Dkt. No. 339, page 6, lines 13-15]. The Court struggles to understand Ms. Doling's point, because as Ms. Doling is aware, the Court continued the hearing on the Motion to Dismiss twice before granting it, each time on Ms. Doling's request, pushing out the hearing approximately two months. As Ms. Doling is also aware, many if not most of the disputes between parties at a Chapter 13 calendar are between the debtors and the Chapter 13 trustee. The dismissal of the Debtors' case was not because of a knee-jerk, *sua sponte*, arbitrary or otherwise rushed decision by the Court. But rather, the Court granted the Trustee's Motion to Dismiss based on the unopposed Ninth Circuit BAP authority presented by the Trustee, and only after giving Debtors two continuances to try to get a loan modification accomplished to cure a plan default well after the plan term had ended. Query, when under these circumstances does Ms. Doling believe the Trustee is entitled to have its Motion to Dismiss granted? Simply stated, notwithstanding that the legal authority fully supported the Trustee's position, the Court gave Debtors multiple continuances until eventually the Court determined that equitable considerations no longer warranted an additional continuance.

5. *Ms. Doling's Argument In The Supplement That Direct Payments Should Be Considered Payments Under A Plan*

In the Supplement, Ms. Doling relies entirely on a brief filed by the Solicitor General in the *Kinney v. HSBC Bank USA, N.A.* petition for a Writ of Certiorari to the United States of Appeals for the Tenth Circuit, No. 21-599. This is unavailing, because the point raised in the excerpts of the Solicitor General's brief incorporated into the Supplement is clearly different from that advanced by Ms. Doling.

- 15 -

Specifically, the Solicitor General excerpts address the situation of whether the Court can allow a debtor to cure a default *after* the plan commitment period, or whether a court must automatically deny a completion discharge at that point, *but that is not the same issue as whether a direct payment is a payment under a plan* (even assuming for the sake of argument that this Court was analyzing the latter issue). The irony here, that Ms. Doling appears to miss, is that this Court effectively adopted the spirit of the debtor-friendly position advanced by the Solicitor General and continued the hearing on the Motion to Dismiss multiple times *after* the plan term had ended, at Ms. Doling's request, in order to allow Debtors an opportunity to cure. The citation to the Solicitor General's brief is thus completely misplaced and irrelevant.

6. *Ms. Doling's Various Ad Hominem Assertions Against The Court*

The Court feels compelled to address certain non-material arguments made by Ms. Doling in her Response directed to the Court. Notwithstanding Ms. Doling's recitation of integrity, experience, position in the bankruptcy community, etc., the Court feels strongly that several of Ms. Doling's comments are wholly unwarranted and unprofessional, and is compelled to address several of them here.[6]

First, Ms. Doling states at page 7, lines 2-4, Ms. Doling states that "[f]urther, it has been Counsel's direct experience with this Court in other matters that this Court is not inclined to follow non-binding opinions of the Ninth Circuit Bankruptcy Appellate Panel, as such it cannot be said that Counsel knowingly made a false statement when she filed the documents required to be filed upon a debtor's final chapter 13 plan payment." However, factually undercutting Ms. Doling's point, the Trustee's Motion to Dismiss expressly relies on the Ninth Circuit BAP *Mrdutt* decision, that direct payments are

---

[6] The lengthy and boastful list of Ms. Doling's accomplishments and experiences in the Response actually undercuts Ms. Doling's position. Perhaps this Court could have overlooked a similar conduct from an inexperienced attorney, but it is beyond the pale that an experienced and successful attorney like Ms. Doling would engage in this conduct and attempt to defend her conduct with illogical and baseless arguments.

- 16 -

payments under a plan, and the Court made its agreement with the Trustee's position abundantly clear to Ms. Doling during the second hearing on the Motion to Dismiss (by, among other things, indicating its intent to grant the Motion to Dismiss at the next hearing if the default was not cured), which occurred *before* Ms. Doling filed the Declaration. Even if arguably the Court had not made its position explicitly clear to Ms. Doling, there is no other way for the Court to grant the Motion to Dismiss other than by implicitly agreeing with the BAP's conclusion in *Mrdutt*, and, conversely, if for some hypothetical reason the Court *did not* agree with *Mrdutt*, there would have been no legal basis to grant the Motion to Dismiss.  As such, this demonstrates the falsity of the latter part of Ms. Doling's statement as to her knowledge (and simultaneously also supports the falsity of the former part of the statement). So if the latter part of Ms. Doling's statement is undermined by the facts of the case, what is the point of the statement and how does it matter? What cases or matters is Ms. Doling talking about? There is certainly no explanation or detail to the assertion. The only apparent conclusion the Court can surmise is that it is an attempt to somehow disparage this Court, as to what reason the Court declines to speculate. In any event, the statement is irrelevant and unsupported at best, and unprofessional and unbefitting an officer of the court at worst.

Second, in the Response at page 3, line 27, and page 4, lines 1-2, Ms. Doling states that "[t]ime and again, Counsel felt this court's frustration was misdirected at her, as *seems* to be the case with many attorneys appearing on behalf of consumer debtors." (emphasis added). Again, what is Ms. Doling referring to, in making the vague assertion that the Court allegedly misdirects frustration to "many attorneys"? As there is no explanation or detail in support of the cryptic inference, how exactly is the Court supposed to place this in context of a coherent analysis? The statement is reminiscent of the middle school taunt; "you know, no one likes you." But as Ms. Doling points out at length in paragraph 3 of the Response, the Debtors' case was extremely long and difficult, with many motions to dismiss filed because of repeated defaults, and extensions resulting in a 78-month plan. Notwithstanding all these many problems and many motions to dismiss, however, *the Court did not dismiss the case until after the 78-month plan term completed, when a $52,439.58 default came to light, and Debtors could not*

- 17 -

*cure that default notwithstanding that the Court granted Ms. Doling's request for multiple continuances of the hearing on the Motion to Dismiss.* The Court's role, as Ms. Doling should be aware, is not to always rule in favor of debtors, or the Trustee, or creditors. Instead, it is the Court's obligation to make the most equitable ruling taking into account the interests of all the parties before it and as best supported by the record and applicable law. In this case, the law and equities ultimately favored dismissal, but unfortunately Ms. Doling apparently feels compelled to lay blame at the Court's feet. Ms. Doling may be smarting from the dismissal of the case, and/or the OSC, and while the Court is fully aware that the practice of law can be extremely difficult, frustrating and/or stressful, commentary such as this does not reflect the level of integrity and professionalism the Court expects would come from counsel as respected and experienced as Ms. Doling purports to be in the Response.

*IV.    Conclusion*

Based on the foregoing, the Court concludes that, given the circumstances of the case: (1) the Declaration contains an allegation or factual contention devoid of any factual support and lacking legal support at the time the Declaration was filed; and (2) Counsel filed the Declaration knowing that Debtors had not completed all their plan payments. The Court further concludes that these actions and the attempt to obtain an order avoiding the Irving Family Lien, as well as the attempt to obtain discharges of Debtors, made without providing any notice or setting a hearing on the request for a final order on the Lien Avoidance Motion in order to qualify, clarify or argue in support of the testimony at issue, constitutes willful and subjective bad faith by Ms. Doling given the circumstances of the case. Therefore, the Court finds that sanctions under FED. R. BANKR. P. Rule 9011(c) are warranted.

Alternatively, the Court concludes that sanctions are warranted under the Court's inherent sanction authority and Local Rule 2090-2 based upon the same willful, bad faith conduct described above.

The Court acknowledges it delayed in entering this order while it considered dismissing the OSC, given the facts that, first, the Court takes no pleasure in sanctioning counsel generally, and second, that the Court discovered the false statement and never entered a final order on the Lien Avoidance Motion (the "no harm no foul" approach). But after lengthy reflection, the Court finds it cannot simply sweep the matter under the rug. At heart, it is the integrity of the bankruptcy system that is the Court is compelled to protect. Simply stated, if bankruptcy courts cannot rely on counsel, officers of the court, to be truthful in their testimony, the system will grind to a halt, or at the very least it will severely undermine the function of the bankruptcy courts to render fair and informed rulings adequately and competently. Ms. Doling's advocacy in this matter crossed the line from zealous to overzealous to, ultimately, unethical, and thus the Court feels compelled to issue this order to prevent similar behavior in the future, or at least make clear it will not go unaddressed. Ms. Doling is of course free to defend herself as she sees fit. However, given the analysis above, the Court would be remiss not to suggest that the better course of action would have been for Ms. Doling to say, "sorry, won't do it again", which the Court believes would have been the end of this matter.

In accordance with the foregoing, pursuant to FED. R. BANKR. P. Rule 9011(c), the Court's inherent sanctioning authority, and Local Rule 2090-2, the Court hereby sanctions Ms. Doling in the amount of $5,000.00, to be paid to the Clerk of Court within thirty days of the entry of this order. This amount is based on the flat no-look fee for Chapter 13 debtor's counsel of $5,000 (although based on the Court's review of the docket it appears that Ms. Doling actually received $14,174.50 in this case from Debtors directly or from plan payments, which is almost three times the flat no-look fee. [Dk. No. 342]), is approximately one-tenth of the amount of Debtor's existing plan default that was the subject of the Motion to Dismiss, and is approximately one-twentieth of the amount of the debt secured by the Irving Family Lien, which lien Ms. Doling attempted to avoid on a final basis using false testimony.

IT IS SO ORDERED.

###

Date: January 27, 2023

Mark Houle
United States Bankruptcy Judge