FILED & ENTERED

JUN 16 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY craig    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>Kirk Eugene Frantz & Mary Elizabeth Frantz<br><br><br>                                  Debtors. | Case No: 6:15-bk-19432-MH<br><br>Chapter: 13<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER OF SANCTIONS**<br><br><u>Hearing Held:</u><br><br>Date: March 7, 2023<br>Time: 11:30 a.m.<br>Place: 3420 Twelfth St.<br>Riverside, CA 92501<br>Courtroom: 301 |

*I.    Background*

On September 25, 2015, Kirk & Mary Frantz (collectively, "Debtors") filed a Chapter 13 voluntary petition. On October 22, 2015, Debtors filed a motion to avoid the junior lien of John Irving, Trustee of the Irving Family Trust ("Irving Family Lien"), pursuant to 11 U.S.C. § 506 ("Lien Avoidance Motion"). On November 18, 2015, the Court entered an order conditionally granting the Lien Avoidance Motion. The Court's order expressly provided that avoidance of the Irvine Family Lien was effective upon, and contingent upon, "completion of the chapter 13 plan." [Dkt. No. 27, sections 4(b)(2) and (6)].[1]

---

[1] Lien avoidance in chapter 13 cases requires a two-step process. In the first step, a debtor files a motion to value the collateral, which must be resolved contemporaneously with the confirmation of a chapter 13 plan. A lien, however, is not actually avoided until a debtor completes the chapter 13 plan, meaning all the plan payments are made. In the second step, a

On December 21, 2015, Debtors' Chapter 13 plan was confirmed, pursuant to which, in part, Debtors were to make direct mortgage maintenance payments to The Bank of New York Mellon ("BNYM"). The plan was subsequently modified three times. Pursuant to the third plan modification, Debtors took advantage of the plan modification provision adopted during the pandemic for debtors who had experienced a financial hardship due to COVID, suspending six plan payments and extending the plan term eighteen months because they "had a roommate who left without notice due to COVID-19." [Dkt. No. 225].

On May 11, 2022, the Chapter 13 trustee filed its notice of intent to file final report. On June 3, 2022, BNYM filed a response to notice of final cure payment, indicating that Debtors were $52,439.58 delinquent on their direct mortgage payments. On June 6, 2022, the Chapter 13 trustee ("Trustee") filed a motion to dismiss the case for failure to make plan payments ("Motion to Dismiss"), specifically the default in direct payments to BNYM. Key to this matter, in the Motion to Dismiss, the Trustee expressly argued, citing applicable Ninth Circuit BAP authority, that the direct mortgage maintenance payments to BNYM were "payments under the plan" for purposes of eligibility under 11 U.S.C. 1328(a), and that failure to make those payments constitutes a material default under the plan. [Dkt. No. 298, pg. 5-6]. Stated otherwise, if somehow the Court disagreed with the Trustee's authority, there would have been no legal basis to grant the Motion to Dismiss. Debtors did not file any opposition to the Motion to Dismiss.

The first hearing on the Motion to Dismiss on June 30, 2022, was approximately four minutes in duration. Attorney Jenny Doling ("Ms. Doling") appeared on behalf of the Debtors. The sole basis of Ms. Doling's oral opposition to the Motion to Dismiss was that Debtors believed that the arrears should

---

debtor or a debtor's attorney files a declaration under the penalty of perjury to prove to the Court that all plan payments have been made. Debtors in this case employed this two-step process using the Court's form pleadings established under the local rules. Since the Court does not perform the accounting function of tracking a debtor's chapter 13 plan payments, it must rely on the representations made by a debtor or debtor's counsel in the declaration filed under penalty of perjury that all plan payments have been made before an order avoiding a lien is entered.

- 2 -

have been added to the end of the loan pursuant to a loan modification allegedly entered into during the pandemic, and Ms. Doling requested a four-week continuance to resolve the issue. Despite the fact that Ms. Doling failed to file a written opposition as required by the Court's local rules if a party opposes the relief requested, based upon Ms. Doling's oral request the Court agreed to continue the hearing on the Motion to Dismiss for four weeks to July 28, 2022. The Court instructed Ms. Doling that if the matter was not resolved by then, a declaration was to be filed by July 25, 2022, detailing any updates.

After the continuance, on July 12, 2022, Debtors filed their applications for discharge where they indicated that, *inter alia*, "I have completed all payments required by my confirmed plan." [Dkt. Nos. 308 and 309].

On July 28, 2022, the Court held a second hearing on the Motion to Dismiss.  By that date and time, Ms. Doling had failed to file the required declaration from Debtors (due July 25, 2022), and Debtors had still not cured the default owing to BNYM.  At the hearing, Ms. Doling represented that: "Patrick Lovejoy for the loss mitigation part of Shellpoint Mortgage Servicing had said the loan was approved for a loan modification. It is in the trial period and they will be withdrawing." [Dkt. No. 336]. At the conclusion of that hearing, based on the continuing default past the plan term, the Court once again agreed to and did continue the hearing on the Motion to Dismiss, for a second time, to August 25, 2022, telling Ms. Doling that "unless I have a[n] unqualified withdrawal of the notice by the lender, I'm going to dismiss the case."

Notwithstanding this background however, after the second continuance of the hearing on the Motion to Dismiss, on August 5, 2022, Ms. Doling filed her Declaration RE: Debtor's Motion to Avoid Lien on Principal Residence (the "Declaration"), pursuant to which Ms. Doling sought a final order avoiding the Irving Family Lien, and in which Ms. Doling stated in part that "Debtor has completed the Chapter 13 plan." [Dkt. No. 316]. Ms. Doling then uploaded a proposed order requesting that the Court enter a final order avoiding the Irving Family Lien on their principal residence.

- 3 -

Prior to the third hearing on the Motion to Dismiss, Debtors filed a declaration that declared, *inter alia*, that "We have completed our trial payment period and await the final modification agreement from Shellpoint. We have been advised Shellpoint is amending its response to the Notice of Final Cure to reflect the completion of the trial modification and approval of the permanent modification which removes any arrears." [Dkt. No. 320, ¶ 16]. Ms. Doling also filed a declaration that included the statement that "Debtors' loan is now deemed current." [Dkt. No. 321, ¶ 6].

At the third hearing on the Motion to Dismiss, on August 25, 2022, when asked by the Court whether there was still a delinquency, counsel for the mortgage servicer stated: "Right now they are owing, your Honor." [Dkt. No. 337, pg. 18, line 9]. Counsel for the mortgage servicer also stated that "the inescapable facts are, until that event [the formation of a binding agreement] is done, their default exists." [*Id*. at pg. 19, lines 2-4]. Debtors requested an additional continuance of the hearing on the Motion to Dismiss, but the Court denied that request, granted the Motion to Dismiss, and dismissed the case pursuant to order entered August 26, 2022. Of significance, during the hearings on the Motion to Dismiss the Court made multiple references acknowledging that the Debtors were in default under the plan, and that Trustee was entitled to dismissal of the case. Yet at no point during any of the three hearings on the Trustee's Motion to Dismiss did Ms. Doling raise any opposition or argument (or file any written opposition) on the basis that either, notwithstanding Debtor's uncured default in the monthly mortgage maintenance payments, such direct payments should not be considered "payments under a plan", or that the Debtors' plan could or should somehow otherwise be deemed "completed".

Based on the apparently false statement in Ms. Doling's Declaration that Debtors had "completed the Chapter 13 plan", on August 31, 2022, the Court issued an Order to Show Cause as to why Counsel should not be sanctioned under FED. R. BANKR. P. Rule 9011 and/or the Court's inherent sanction authority and Local Bankruptcy Rule 2090-2 ("OSC"). On September 14, 2022, Counsel filed her response ("Response"), and on September 21, 2022, Counsel filed a supplemental brief ("Supplement"). On September 22, 2022, the Court held a hearing on the OSC.

On January 27, 2023, the Court entered an order sanctioning Ms. Doling $5,000 ("Sanctions Order"). On February 9, 2023, Ms. Doling filed a motion for reconsideration ("Reconsideration Motion").

  II.   Legal Authorities

FED. R. CIV. P. Rule 59, incorporated into bankruptcy proceedings by FED. R. BANKR. P. Rule 9023, provides the basis for seeking reconsideration of a court order during the time for appeal.

Reconsideration is appropriate if the Court is "(1) presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "There may also be other, highly unusual, circumstances warranting reconsideration." *Id*. Courts also regularly apply Rule 60(b) grounds when considering a motion for reconsideration. *See, e.g., id.* Finally, Local Rule 9013-4(a) provides certain enumerated grounds for amendment of judgments.

"A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d873, 880 (9th Cir. 2009) (*quoting Kona Enters., Inc. v. Est. of Bishop*, 220 F.3d 877, 890 (9th Cir. 2000)) (emphasis in original). "Such motions are 'not another opportunity for the losing party to make its strongest case, reassert arguments, or revamp previously unmeritorious arguments," nor is a motion for reconsideration meant to give a party a "second bite at the apple." *Briggs v. OS Restaurant Servs., LLC*, 2021 WL 7448752 at *5 (C.D. Cal. 2021) (*quoting Jackson v. Woodford*, 2008 WL 2115121 at *1 (S.D. Cal. 2008). *See also McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) (en *banc*) (Rule 59(e) is available to "correct manifest errors of law or fact upon which the judgment is based."). As such, all the additional (not "newly discovered")

evidence presented by Ms. Doling in connection with the Reconsideration Motion is improper and should not be considered by this Court.

### III.    Legal Analysis

Evaluating Ms. Doling's argument and (improper) testimony in the Reconsideration Motion presents the same problem that the Court was faced with in evaluating the Response – Ms. Doling makes various factual assertions that simply are not logical, realistic or supported when viewed as a whole. Ms. Doling has presented two bases for reconsideration in the Reconsideration Motion: (a) legal error and (b) abuse of discretion. Regarding the former, the details of the argument are not clear. The "analysis" section of the Reconsideration Motion is simply a narrative, devoid of legal citation or analysis, that is titled "reconsideration of the facts." As such, the Court cannot ascertain what Ms. Doling believes constituted legal error.

Regarding the latter, Ms. Doling has not clearly articulated what she believes constitutes an abuse of discretion, and without authority or analysis it is difficult to comprehend any legal argument in the Reconsideration Motion. The bankruptcy court abuses its discretion if it applies an incorrect rule of law or its factual findings are illogical, implausible, or without support in the record. *United States v. Hinckson*, 585 F.3d 1247, 1262 (9th Cir. 2009). Rather than explaining what specific finding constituted an abuse of discretion based on the record in front of the Court at the time the sanctions were issued, Ms. Doling appears to be attempting to significantly augment the record. For the reasons stated in the final paragraph of section II, *supra*, this approach is manifestly inappropriate.

The Court, obviously, cannot prove what Ms. Doling was thinking when she testified in the Declaration. As noted above, it is also improper for the Court to analyze Ms. Doling's new testimony here in the context of evaluating her Reconsideration Motion. The issue before the Court instead is only to review the record that led to the Sanctions Order to determine the propriety of the Sanctions Order, guided by

Ms. Doling's direction as to the parts of the record the Court needs to reconsider. Ms. Doling did not do that. Instead, she is basically saying, "here, let me explain this another way." For that reason, the Reconsideration Motion must be denied.

Notwithstanding the fatal impropriety of attempting an evidentiary "do-over" in the context of a reconsideration request, the Court addresses certain key points of the narrative provided by Ms. Doling to highlight certain inconsistencies. For example, one of Ms. Doling's assertions in the Reconsideration Motion is that "My argument that it is not well-settled law that direct payments are payments under the plan was made in support of my good faith belief and legal analysis that the direct payments were not plan payments. That is why I believed that since all plan payments had been made, it was appropriate to lodge the LAM Order." [Dkt. No. 347, pg. 8, lines 6-9]. She further testifies that she was aware that Debtors would not be able to avoid the subject lien if the case was dismissed. In essence, Ms. Doling is simultaneously maintaining that: (a) filing the Declaration regarding the lien avoidance motion was appropriate; but (b) entry of an order granting the Lien Avoidance Motion would have been inappropriate. [*See* Dkt. No. 347, pg. 8, lines 11-12] ("I never believed the Debtors would get their discharge or their final lien avoidance order entered if the case was to be dismissed."). The inconsistency between those two assertions is obvious. Ms. Doling's position seems to be that the Court would somehow know to hold the proposed lien strip order for several weeks pending the hearing on the Motion to Dismiss. The Court must conclude that any party that lodges an order wants the Court to enter that order, and the Court explained in detail in the Sanctions Order that it cannot be the Court's burden to evaluate whether testimony supporting a proposed order is true or false. Moreover, this position is not compatible with Ms. Doling's other position that she was "just being efficient." Quite simply, why would Ms. Doling push forward with case closing procedures with the pending Motion to Dismiss? Certainly, it would be logical if she just automatically signed her Declaration and submitted the proposed lien strip order as a matter of course without giving it much thought, but Ms. Doling has argued repeatedly to the contrary. Particularly where Ms. Doling knew the survival of the case was extremely precarious at the date and time she filed her Declaration and proposed order, and thus those

pleadings were strikingly premature, Ms. Doling's testimony in this regard as to why and when the Declaration (which she signed) and proposed order were submitted is not logical or persuasive.

A review of Ms. Doling's Response does not explain this inconsistency. Instead, she cryptically states that 'I could not have known this Court's position on the question of "what constitutes a payment under a plan"' [Dkt. No. 339, pg. 15, lines 5-6]. As discussed in the Sanctions Order, at the time she signed the Declaration, Ms. Doling was well aware of the Trustee's legal position on this issue, she was aware the Court had indicated its support of the Trustee's legal position by continuing the hearing only for the Debtors to attempt to cure the default, the Motion to Dismiss was pending, and Ms. Doling never sought to clarify the Court's position on the issue or argue her "competing authority" to the Court.

To put a fine point on this, in the Reconsideration Motion Ms. Doling testifies that "Here, we had a good faith belief the plan had completed with the final plan payment and moved forward with our normal case completion duties." [Dkt. No. 347, pg. 5, lines 8-10]. But how can Ms. Doling reasonably have this belief to the extent of testifying that the Debtors had completed their plan against a background of continued hearings on the Trustee's Motion to Dismiss and her knowledge of the Debtors' default?

Another inconsistency reflected in the Reconsideration Motion is that between Ms. Doling's testimony and her lack of legal arguments at the hearings on the Motion to Dismiss. As reflected in the Motion to Dismiss, it was expressly based on the legal arguments that (1) direct payments to a lender are not "payments under the plan" for purposes of discharge eligibility under 11 U.S.C. § 1328(a), and (2) failure to make direct payments constitutes a material default of a plan term under 11 U.S.C. §1307(c)(6). [Dkt. No. 298, pgs. 5-6 (citing *In re Heinzle*, 511 B.R. 69, 82 (Bankr. W.D. Tex. 2014) (finding direct payments were payments under the plan)]. Recall that the specific testimony by Ms. Doling at issue is that "Debtor has completed the Chapter 13 plan." [Dkt 316, pg. 1, ¶ 4]. So, having given her testimony in the Declaration *after* the Trustee raised his legal arguments in the Motion to Dismiss (and knowing full well of the Debtors' defaults), and recalling Ms. Doling's purported expertise

stated in her Response, as well as her testimony that "[i]t would my [sic] error to not raise these important legal arguments on behalf of my clients …." [Dkt. No. 339, pg. 16, lines 8-9], it is inconceivable to the Court that she would hesitate, much less fail, to raise any legal arguments that she believed had merit in opposition to Trustee's request to dismiss her clients' bankruptcy case.

But Ms. Doling did not make any such legal arguments. As conceded several times in the Reconsideration Motion, Ms. Doling never raised the issue of what constitutes a plan payment to argue against dismissal. [*See* Dkt. No. 347, pg. 11, line 24]. And at no point does she explain why she never raised this point.

The evidence in support of the Response, quite simply, did not provide an logical alternative explanation to the Court's conclusion in the Sanctions Order that: (a) Ms. Doling intentionally filed the Declaration; when (b) Ms. Doling knew of the existence of the Trustee's Motion to Dismiss, the legal argument therein, and the pending hearing on the Motion to Dismiss at the time the Declaration was filed; and (c) Ms. Doling's testimony is fully contradicted by the merits of the Motion to Dismiss and the record of the pending hearing. Even if caselaw permitted Ms. Doling a second bite of the apple, Ms. Doling has not presented a coherent and logical explanation for the filing of the Declaration. Certainly, it has not been explained how the Court abused its discretion or made an error of law.

As a final matter, the Court feels compelled to address Ms. Doling's comments in footnote 3, which states as follows:

> "The Court noted that it believed my comments attempting to address a feeling of misdirected frustration toward counsel was a taunt. It was not. Outstanding, reputable members of the bankruptcy bar have recently been threatened with sanctions, issued sanctions, or have felt vulnerable in practice here, something never before experienced and that has caused respected attorneys to abandon this division. This was my failed attempt to bring to light concerns and a desire to restore a collegial atmosphere. We are willing to work together with the court to address concerns of the court and the bar."

[Dkt. No. 347, pg. 13, fn. 3]. Footnote 3 is utterly irrelevant to the merits of the Sanctions Order, and, as Ms. Doling is aware, it is impossible for the Court to respond in any meaningful way to vague and unspecified accusations brought, ironically, only for the first time to the Court's attention by Ms. Doling in response to the Court's OSC against her. Very simply, as set forth in detail in the Sanctions Order, the Court found that Ms. Doling made a false statement to the Court, and as explained herein, nothing in the Reconsideration Motion changes that finding.

Last, at the hearing on the Reconsideration Motion, Ms. Doling requested that the sanction amount be reduced from $5,000 to $1,000, for the reason that it not have to be reported to the State Bar. The Court has delayed in entering this order (to an admitted fault) while it struggled greatly at significant length with whether to impose sanctions and whether to reduce the amount. Importantly, this internal debate was not over whether sanctions are warranted - in that the Court is certain. Ultimately, in deliberating over the Reconsideration Motion, the Court concludes that Ms. Doling has not presented any sufficient legal, factual or equitable basis in the record of the Sanctions Order to reduce or retract the sanctions award. As the Court alluded to its initial order, without candor from the court officers who appear before it, the ability of the courts to render fair and just rulings is weakened, and the integrity of the judicial process is diminished.

*IV.    Conclusion*

For the foregoing reasons, the Court finds that Ms. Doling has not established grounds of abuse of discretion or legal error by the Court in entering the Sanctions Order pursuant to Fed. R. Civ. P. Rule 59 so as to warrant a change in the Court's position, and the Reconsideration Motion is hereby denied.

IT IS SO ORDERED.

###

Date: June 16, 2023

Mark Houle
United States Bankruptcy Judge